NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| MARK EODICE, | ) | |
| | ) | |
| Plaintiff, | ) | Hon. Garrett E. Brown, Jr. |
| | ) | |
| v. | ) | Civil No. 08-151 |
| | ) | |
| SELECTIVE INSURANCE COMPANY OF | ) | **MEMORANDUM OPINION** |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Gregory J. Schwartz, Esq.
SCHWARTZ KELLY, LLC
67 Beaver Avenue
Suite 25
Annadale, New Jersey 08801
*Attorneys for Plaintiff*

Gary S. Kull, Esq.
CARROLL, MCNULTY & KULL, LLC
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, New Jersey 07920
*Attorneys for Defendant*

**BROWN**, Chief Judge:

This matter involves contract and tort claims arising from the procurement and

adjustment of Standard Flood Insurance Policies issued pursuant to the National Flood Insurance

Program (NFIP).  Presently before the Court are the cross-motions (Doc. Nos. 35, 38) for

summary judgment filed by Defendant Selective Insurance Company of America ("Selective")

1

and Plaintiff Mark Eodice, respectively.[1]  For the following reasons, the Court will grant Defendant's motion and deny Plaintiff's motion.

I.      THE NFIP & FEMA'S WRITE YOUR OWN PROGRAM

The NFIP is a federally guaranteed flood insurance program administered by the Federal Emergency Management Agency (FEMA) pursuant to the National Flood Insurance Act of 1968 (NFIA) and its implementing regulations.  *Van Holt v. Liberty Mut. Fire Ins. Co.* ("*Van Holt II*"), 163 F.3d 161, 165 (3d Cir. 1998) (citing 44 C.F.R. §§ 59.1–77.2.).  Exercising regulatory authority granted by 42 U.S.C. § 4081(a), FEMA established the Write Your Own (WYO) program in 1983, whereby private insurance company participants would issue Government-designed Standard Flood Insurance Policies (SFIPs),[2] charge premiums on behalf of the Government, adjust claims arising under the SFIPs, and defend against related legal actions.  The Government, in return, would reimburse the WYO insurer for claims paid under the SFIPs and related litigation costs,[3] and pay the WYO insurer a flat 3.3% commission on claims paid.[4]  *See generally* 44 C.F.R. Pt. 62, App. A; 44 C.F.R. § 62.23(c), (d), and (i)(6); *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 270 n.8 (3d Cir. 2004); *Van Holt II*, 163 F.3d at 165.

Private insurers join the WYO program by entering into an agreement with FEMA, the

---

[1]This case was reassigned to the undersigned by Order of August 10, 2009.

[2]The SFIP is codified at 44 C.F.R. Pt. 61, App. A(1).  For ease of reading, the Court will cite the SFIP solely by its internal articles and sections.

[3]Reimbursable litigation costs "include payments as a result of litigation that arises under the scope of this Arrangement."  44 C.F.R. Pt. 62, App. A, art. III(D)(2).

[4]By virtue of this regulatory design, suits arising under SFIPs usually do not include FEMA as a named Defendant.

details of which are codified in the "Arrangement," 44 C.F.R. Pt. 62, App. A.[5]  Federal law strictly limits WYO insurers' discretion by providing that WYO insurers act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1),[6] and prohibiting them from altering any provision of the SFIP without the express approval of the Federal Insurance Administrator, 44 C.F.R. § 61.13(d).  At the same time, "States have no regulatory control over the [NFIP's] operations." *C.E.R. 1988*, 386 F.3d at 267.  This regulatory design has prompted courts to view WYO insurers as Government-sanctioned private administrators of the NFIP.  *See id.* ("In essence, the [WYO insurers] serve as administrators for the federal program.  It is the Government, not the [WYO insurers], that pays the claims.")

II.    PLAINTIFF'S FLOOD CLAIMS: THE WASHINGTON & WYOMING PROPERTIES

Plaintiff Mark Eodice owns two properties in Manville, New Jersey: one at 407 Washington Street ("Washington property") and one at 217 Wyoming Place ("Wyoming property").   On or about April 16, 2007, both properties sustained significant flood damage, whereupon Plaintiff sought to file claims with Selective, his flood insurance carrier.  Selective is a WYO insurer.  At the time of the flood, both the Washington and Wyoming properties were covered by SFIPs.[7]

_____

[5]For ease of reading, the Court will cite the Arrangement solely by its internal articles and sections.

[6]While federal law designates WYO insurers as "fiscal agents" of the Government, courts have recognized that this status entails lesser authority than that of a general agent.  *C.E.R. 1988*, 386 F.3d at 267 (noting that WYO insurers "must strictly enforce the provisions set out by FEMA" unless the Federal Insurance Administrator expressly authorizes a different course of conduct).

[7]The Washington property was covered by SFIP no. FLD1052985, which provided up to $150,000 coverage for the building located there and up to $60,000 coverage for its contents.

Upon notification of the loss, Selective secured an adjuster from Independent Claims & Catastrophe Services, Inc. to assist Plaintiff in preparing the sworn proof of loss (POL) required by Article VII(J)(4) of the SFIP to present a claim for each property.  The adjuster inspected both premises on or about June 8, 2007, and prepared draft POLs and supporting documentation stating net claims of $36,074.08 for the Washington property and $26,450.55 for the Wyoming property.  Plaintiff asserts that he received the draft POLs shortly before the filing deadline and that the adjuster told him that he needed to sign the POLs right away in order to present a valid claim.  Plaintiff did not agree with the adjuster's computation of recoverable damages, but he contends that the adjuster told him to sign and submit the POLs immediately so he would not miss the SFIP claim-filing deadline, with the assurance that Plaintiff could substitute a different damages figure on the POL and make further claims adjustments at a later time.  (Pl.'s app. vol. VI at 253, 256, 261–62 (Eodice Dep. at 47, 58, 80–83).)

Plaintiff signed and submitted the adjuster's POLs for the Washington and Wyoming properties on June 11, 2007 (hereinafter "2007 POL(s)"), but while Plaintiff adopted the adjuster's claim computation for the Washington property, Plaintiff replaced the $26,450.55-figure listed for the Wyoming property with a net claim of $93,000.  (Pl.'s app. vol. VI at 261–62 (Eodice Dep. at 80–83); *see also* Def.'s L. Civ. R. 56.1 Statement, Ex. A (Gangemi Aff.) ¶¶ 11–18, 21, 27, 29–30.)  Plaintiff does not recall whether he submitted supporting documentation for the increased net claim on the Wyoming property (Pl.'s app. vol. VI at 263 (Eodice Dep. at 86:23–87:13)), but Selective's Flood Operations Manager Deborah Gangemi attests, based on her

The Wyoming property was covered by SFIP no. 0082870, which limited coverage of the building and its contents to $165,000 and $10,000, respectively.  (Def.'s L. Civ. R. 56.1 Statement, Ex. C.)

review of Plaintiff's claims, that Plaintiff did not submit supporting documentation for the increase to this claim (Gangemi Aff. ¶ 30).  Plaintiff conceded during his deposition that he did not file an additional POL for the Wyoming property (Pl.'s app. vol. VI at 263 (Eodice Dep. at 86:19–22)), and based upon this Court's review of the record, it appears that Plaintiff has submitted no additional POLs since the 2007 flood, other than the two mentioned above, for either the Washington or the Wyoming property.

Selective paid the full amount claimed by the Washington property POL, but rejected the Wyoming property POL for lack of substantiation on June 22, 2007, instead tendering payment in the amount of $26,450.55 on the basis of the adjuster's report.  (Pl.'s app. vol. VII at 308 (June 22, 2007 Letter of Lori Paliana, Sr. Claims Examiner); *see also* Gangemi Aff. ¶¶ 30, 34–35.) The record reflects that Plaintiff did not exercise his right pursuant to 44 C.F.R. § 62.20 to appeal Selective's disposition of his claims to FEMA.  (*See* Pl.'s app. vol. VI at 259 (Eodice Dep. at 70:18–71:15).)

Although the present dispute directly stems from claims filed for the 2007 flood damage, it appears that the seeds of conflict were sown nearly a decade earlier by Selective's initial representations about the partially-submerged first floor of the Wyoming property.  SFIPs provide limited coverage for building and personal property kept in a basement, *see* SFIP art. III(A)(8) and (B)(3), which is defined by the SFIP as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides," SFIP Art. II(B)(5).  When Plaintiff first purchased the Wyoming-property SFIP in 1998 from an insurance provider associated with Selective—specifically, Oak Agency Inc., which, the

5

Court understands, eventually became the E.A. Boniakowski Agency Inc. ("Boniakowski")[8]—the Amended Policy Declaration indicated that the property did not have a basement.  (Pl.'s app. vol. IV at 173.)  After the Wyoming property suffered flood damage in 1999, the adjuster hired by Selective also deemed the property to not have a basement, and Selective paid Plaintiff's entire claimed loss of $87,158.84.  (Pl.'s app. vols. II at 85, VII at 321–23.)  Yet Plaintiff did not have flood insurance for the Washington property at the time, and Plaintiff suffered substantial losses from the valuable contents he kept in the basement there.  On the basis of his positive experience with Selective's adjustment of the Wyoming property claim arising from the 1999 flood, Plaintiff sought to purchase flood insurance for the Washington property that would protect valuables kept in the basement, and his Boniakowski insurance agent informed him that the proposed flood insurance would cover such items.  (Pl.'s app. vol. VI at 264 (Eodice Dep. at 90–94).)[9]  Pursuant to these representations, Plaintiff purchased an SFIP for the Washington property and continued renewing his Wyoming-property SFIP.

　　　Circumstances appear to have changed, however, when Plaintiff filed his claims for the 2007 flood damage.  Although it appears that Selective still considered the Wyoming property to

---

[8]Although Boniakowski has not been named as a Defendant in this suit, Plaintiff's Complaint seeks to hold Selective liable for misrepresentations allegedly made by Boniakowski's insurance agents at a time when Boniakowski operated as the legal agent of Selective.  Towards this end, Plaintiff has presented the Court with an agency agreement between Boniakowski and Selective providing that Boniakowski would issue Selective-backed SFIPs on Selective's behalf. (Pl.'s app. vol. VIII at 391.)  For the purposes of this motion, the Court will presume that Boniakowski served as the legal agent of Selective with regard to Plaintiff's SFIPs.

[9]The Court notes that Plaintiff does not contend that a *Selective* employee represented that the SFIP covered property kept in a basement.  (Pl.'s app. vol. VI at 265 (Eodice Dep. at 94–95 (explaining that he never spoke with a Selective employee directly about the insurance coverage for basement contents)).)

have no basement two days after the 2007 flood, as evidenced by an internal document prepared by Selective on April 18, 2007 (Pl.'s app. at 144 (Open Coverage Verification Sheet)), the adjuster hired by Selective to review Plaintiff's damages notified Plaintiff that the Wyoming property's sub-grade first floor qualified as a basement subject to limited coverage under the SFIP and, therefore, refused to consider certain losses and supporting documentation provided by Plaintiff.  (*See* Pl.'s app. vol. IV at 157 (Stewart Report); Pl.'s app. vol. VI at 254, 261 (Eodice Dep. at 50–52, 79).)  Selective's subsequent reinspection of the Wyoming property confirmed that the first floor qualified as a basement subject to limited coverage under the SFIP.  (Pl.'s app. vol. VII at 313 (Aug. 10, 2007 Letter of Melody Rauscher, Flood Claim Examiner).)[10]

Although he received approximately $62,000 from Selective for the 2007 Washington and Wyoming property claims, Plaintiff contends that he sustained a total loss of approximately $300,000 ($200,000 property and contents damage to the Washington property and $100,000 property and contents damage to the Wyoming property) from the 2007 flood.  (Pl.'s Cross-Mot. Br. at 11; Pl.'s Resp. Br. at 6 & n.38.)  Plaintiff asserts that he relied to his detriment on Selective's representations regarding the SFIP coverage for the Washington and Wyoming properties.  He further alleges that Selective violated the NFIP and its implementing regulations by, *inter alia*: incorrectly rating the Wyoming property basement from 1999–2007 and charging

---

[10]The record indicates that all sides of the Wyoming property's first floor sit below ground level by a matter of inches, and that visitors to the home must step down into the room when entering from outside.  (Pl.'s app. vol. VI at 293 (Paliana Dep. at 76–77).)  Plaintiff does not contest that the first floor of the Wyoming property qualifies as a basement under the SFIP.  (*See* Pl.'s Cross-Mot. Reply Br. at 5–6 (noting that Selective's rating of the Wyoming property was "incorrect" and that Selective "misappropriated" U.S. Treasury funds by making full payment for the 1999 flood claim); Pl.'s Resp. Br. at 18–19 ("[T]ruth be told, there is no issue about the sunken room—it is what it is.")

incorrect premiums for the insurance; misappropriating U.S. Treasury funds with regard to the erroneous full payment of the 1999 Wyoming property claim; failing to conduct an independent review of the third-party adjuster's damage reports; failing to use a certified elevation examiner when it re-rated the Wyoming first floor as a basement; failing to compare the 2007 claims with the 1999 claim; failing to respond to Plaintiff's correspondence and document requests; failing to obtain a non-waiver agreement from Plaintiff; and threatening, via a third party, to recoup the money paid on the 1999 claim.  *See* Pl.'s Cross-Mot. Br. at 15–21; Pl.'s Cross-Mot. Reply Br. at 6–7.

Plaintiff filed a six-count Complaint against Selective on January 7, 2008, presenting claims for breach of contract, bad faith, fraud in the procurement, estoppel, respondeat superior, and violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*  Selective now moves for summary judgment on all counts, and Plaintiff cross-moves for partial summary judgment on its claims for estoppel, bad faith, and violation of the Consumer Fraud Act.

III.   ANALYSIS

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist,

8

this Court must view the underlying facts and draw all reasonable inferences in favor of the

non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

*Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811

F.2d 225, 231 (3d Cir. 1987).  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1367 and 42 U.S.C. § 4072.  *Van Holt II*, 163 F.3d at 167.

Selective seeks summary judgment on all of Plaintiff's claims, arguing (i) that certain

claims are preempted by the NFIP, (ii) that others are barred by the Appropriations Clause of the

U.S. Constitution, (iii) that Plaintiff's failure to adhere to SFIP filing requirements forecloses his

contract claims, (iv) that the Arrangement does not authorize a private right of action to sanction

a WYO's non-compliance with its provisions, (v) that Plaintiff's reliance on Selective's

representations was unreasonable as a matter of law, and (vi) that the NFIP's division of liability

between the WYO insurer and the individual insurance agent precludes imposing vicarious

liability on Selective for the alleged misconduct of its agents.  Plaintiff primarily relies on *Messa*

*v. Omaha Property & Casualty Insurance Co.* ("*Messa I*"), 122 F. Supp. 2d 513 (D.N.J. 2000), to

argue that his claims are not preempted because they are grounded in procurement fraud rather

than claims adjustment.  Plaintiff further argues that the record conclusively establishes his

claims for estoppel, bad faith, and violation of the Consumer Fraud Act.  The Court will address

the parties' arguments with regard to each claim in turn.

### A.  Breach of Contract

With regard to Plaintiff's contract claim that Selective breached its obligations under the

SFIPs for the Washington and Wyoming properties, Selective argues that these claims are

foreclosed by Plaintiff's failure to comply with SFIP requirements.  Specifically, Selective cites

the following omissions: (i) with regard to the Washington property, that Plaintiff failed to file the sworn POL required by Article VII(J)(4) of the SFIP for damages above and beyond the amount claimed by the 2007 POL and paid by Selective; and (ii) with regard to the Wyoming property, that Plaintiff failed to submit supporting documentation required by Article VII(J)(3) and (J)(4) of the SFIP that would justify the $93,000 in damages he claimed in the 2007 POL. Plaintiff does not dispute the above omissions,[11] but instead argues that Selective's interference with the POL process exempts Plaintiff from the SFIP filing requirements. (*See* Pl.'s Resp. Br. at 22–25.) Plaintiff's argument lacks foundation.

Article VII(R) of the SFIP conditions the insured's right to sue the WYO insurer upon satisfaction of all SFIP requirements. SFIP art. VII(R) ("You may not sue us to recover money under this policy unless you have complied with all the requirements of this policy."). Among other filing requirements, the SFIP requires the insured to prepare a sworn POL within 60 days of the loss to include such items as an inventory of damaged property, specifications of the damaged buildings, and detailed documentation supporting the value of the loss and estimating the cost of

---

[11]Oddly, Plaintiff contends that he does not seek coverage under the SFIP and therefore is not bringing suit under the NFIP. (Pl.'s Resp. Br. at 10, 22.) This response appears to disavow his SFIP-based breach of contract claim altogether, but it controverts the accompanying footnote, which appears to recognize that the first count of Plaintiff's Complaint alleges that Selective breached its contractual obligations under the SFIP. (*Id.* at 22 n.95.) Even more puzzling, considering that Selective only raises the filing-requirements issue as a defense to Plaintiff's breach of contract claim (*see* Def.'s Br. at 13–22), is Plaintiff's suggestion that SFIP filing requirements are "irrelevant" to the Court's consideration of Plaintiff's tort claims (*see* Pl.'s Resp. Br. at 22). Disregarding Plaintiff's apparent confusion about his own claims, this line of argument provides no basis for denying Selective's motion with regard to either the contract or tort claims.

repairs.  *See* SFIP art. VII(J)(3) and (J)(4).[12]  Article VII further instructs the insured to "use [his/her] own judgment concerning the amount of loss and justify that amount" when they prepare the POL.  *Id.* art. VII(J)(5).

On the basis of the SFIP and related regulations, the Third Circuit has held that an insured's failure to comply with Article VII's POL-filing requirements bars subsequent legal actions for recovery under the SFIP.  *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809–10 (3d Cir. 2005).  The *Suopys* court explained that courts must demand "strict adherence" to the SFIP's preconditions to lawsuit "[b]ecause any claim paid by a WYO Company is a direct charge to the United States Treasury."  *Id.* at 809.  In other words, courts do not have the discretion to rewrite the SFIP's filing requirements.

---

[12]Section (J) of Article VII imposes the following "Requirements in Case of Loss":

In case of a flood loss to insured property, [the insured] must:

\*\*\*

3. Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts, and related documents;

4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

\*\*\*

f.  Specifications of damaged buildings and detailed repair estimates;

\*\*\*

i.  The inventory of damaged personal property described in J.3. above.

SFIP art. VII(J)(3) and (J)(4).

11

Plaintiff argues that *Suopys* is inapposite because Selective "hindered the creation" of accurate POLs and falsely represented that Plaintiff could revise prior POLs with subsequent submissions.  (Pl.'s Resp. Br. at 24–25.)  Yet the *Suopys* court categorically rejected the contention that the representations of a WYO insurer or an adjuster could waive the SFIP filing requirements.  *Suopys*, 404 F.3d at 810 ("The SFIP places the onus on the insured to file the proof of loss within 60 days regardless of the representations and assistance, or lack thereof, provided by the insurer or its adjuster.") (citing *Phelps v. FEMA*, 785 F.2d 13 (1st Cir. 1986)).  Indeed, the SFIP expressly disclaims any responsibility on the part of the WYO insurer for the completion of the POL, *see* SFIP art. VII(J)(7),[13] and federal regulation provides that WYO insurers like Selective cannot waive, alter, or amend the SFIP filing requirements, 44 C.F.R. § 61.13(d).[14]  Thus, any misrepresentation regarding the SFIP's filing requirements or failure to assist with the drafting of the POL by Selective cannot excuse Plaintiff's non-compliance with the same.

It is undisputed that, with regard to the Washington property, Plaintiff failed to file a

---

[13]Article VII(J)(7) of the SFIP provides that "[t]he insurance adjuster whom we hire to investigate your claim *may* furnish you with a proof of loss form, and she or he *may* help you complete it," but notes that any assistance with the POL "is a matter of *courtesy only*," and that "[the insured] must still send [the WYO] a proof of loss within 60 days after the loss even if the adjuster does not furnish the [POL] or help [the insured] complete it."  SFIP Article VII(J)(7) (emphases added).

[14]The Court further notes that the factual basis for Plaintiff's allegation that Selective hindered his ability to file a POL is suspect.  On the one hand, Plaintiff does not specify how Selective hindered his preparation of a POL.  Indeed, the undisputed record reflects that Plaintiff timely filed POLs for the Washington and Wyoming properties on June 11, 2007, and has not filed any subsequent POLs for the 2007 flood damages.  *See supra* Part II.  On the other hand, the alleged misrepresentations about the SFIP's filing requirements, according to Plaintiff's deposition testimony, were made by the independent adjuster, not Selective.  (*See* Pl.'s app. vol. VI at 253 (Eodice Dep. at 47).)

sworn POL and supporting documentation for damages in excess of the $36,074.08 paid by

Selective on the 2007 POL.  It is also undisputed that, with regard to the Wyoming property,

Plaintiff did not file supporting documentation for the inflated $93,000-loss claimed by the 2007

POL.  (Pl.'s app. vol. VI at 263 (Eodice Dep. at 86:19–87:13); *see also* Gangemi Aff. ¶ 30.)

Thus, to the extent that Plaintiff seeks additional damages on the Washington property, he has

not filed a sworn POL for additional damages, and to the extent that Plaintiff seeks the additional

damages he claimed in the 2007 POL for the Wyoming property, Plaintiff did not submit a

detailed inventory of damaged property and repair estimates justifying a higher adjustment.

These omissions bar recovery under the SFIP.  *See, e.g.*, *Messa v. Omaha Prop. & Cas. Ins. Co.*

("*Messa II*"), 122 F. Supp. 2d 523, 529–30 (D.N.J. 2000) (explaining that failure to file

additional POLs for damages beyond the amount paid on a previous POL from the same flood

barred contract claims under SFIP).

     The SFIP filing requirements being a mandatory precondition to suit for claims arising

thereunder, and it appearing that no genuine issue of fact remains regarding Plaintiff's non-

compliance with these requirements, the Court will grant summary judgment in favor of

Selective on Plaintiff's claim for breach of contract under the SFIP.

     *B.  Bad Faith—Conduct Outside the Scope of the Arrangement*

     With regard to Plaintiff's claim for bad faith, premised upon Selective's alleged

violations of the rules governing the WYO program contained in the Arrangement, Selective

argues that neither the Arrangement nor the NFIA authorizes a private right of action for an

insured to seek damages arising from a WYO insurer's non-compliance with the Arrangement.

Plaintiff obliquely counters that this Court's constitutional authority to interpret and apply the

laws of the United States enables this Court to enforce the terms of the Arrangement against Selective (Pl.'s Resp. Br. at 29–30), and Plaintiff cross-moves for partial summary judgment on this claim, arguing that it has conclusively established Selective's bad faith in adjusting Plaintiff's insurance claims under New Jersey law (Pl.'s Cross-Mot. Br. at 38).

Plaintiff provides no authority, and this Court has located none, for the proposition that an insured may bring an action for damages premised solely on a WYO insurer's failure to adhere to the requirements of the Arrangement that governs the relationship between FEMA and WYO insurers. Persons insured by SFIPs are not parties to the Arrangement, and the Court sees no reason to infer a private right of action for them to enforce the terms of the Arrangement against a WYO insurer. While the Supreme Court has instructed the federal courts "to be alert to provide such remedies as are necessary to make effective the congressional purpose," *Cort v. Ash*, 422 U.S. 66, 84 (1975) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)), courts must tread cautiously in pronouncing implied causes of action, ever conscious that Congress alone controls the jurisdiction of the lower federal courts, *see Palmore v. United States*, 411 U.S. 389, 400–401 (1973); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 730 (1979) (Powell, J., dissenting).

Here, it would be improvident for this Court to infer a private right of action from the regulations comprising the Arrangement, because it would effectively alter the regulatory regime established by FEMA pursuant to statute. The Arrangement grants FEMA the authority to supervise a WYO insurer's compliance with the Arrangement, as demonstrated by Article III(D)(3)'s procedure for denying reimbursement of a WYO insurer's litigation expenses. This provision vests FEMA's Office of General Counsel (OGC) with the exclusive authority to

14

recommend non-payment of a WYO insurer's litigation expenses if the OGC "finds that the litigation is grounded in actions by the WYO [insurer] that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," and conditions the final non-payment determination upon the Federal Insurance Administrator's concurrence with OGC's recommendation.  Arrangement art. III(D)(3)(a)–(b).  Recognition of Plaintiff's purported claim would task the federal courts with supervisory authority commensurate to that already vested exclusively in the OGC and the Administrator, thereby creating the potential for contradictory findings from the concurrent exercise of jurisdiction and/or obviating the need for independent administrative review altogether.  In the event that a court awarded judgment for violations of the Arrangement and the OGC and Administrator disagreed that the conduct was "significantly outside the scope of th[e] Arrangement, and/or involve[d] issues of agent negligence," the WYO insurer's litigation costs (including the adverse judgment) would be reimbursed pursuant to the Arrangement, with the court's judgment essentially taxing the U.S. treasury.  *See Moffett v. Comp. Scis. Corp.*, 457 F. Supp. 2d 571, 587 (D. Md. 2006) ("Insofar as it is for FEMA's General Counsel in given cases 'to recommend' what is outside the Arrangement, and—so as not to unduly discourage [WYO insurers] from participating in the program—he chooses not to, federal funds are surely implicated.").  In the absence of explicit statutory authority, this Court believes that such an outcome would trammel upon Congress's plenary power to appropriate money.  *See* U.S. Const. art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."); *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424–26 (1990).

Not only would judicial review of a WYO insurer's compliance with the Arrangement

interfere with the administrative review promulgated by FEMA pursuant to statutory authority, but it would burden the courts with the difficult task of fashioning a rule of law for determining when a WYO insurer's conduct fell "significantly outside the scope of th[e] Arrangement, and/or involve[d] issues of agent negligence," per Article III(D)(3)(a) of the Arrangement—or adopting a different standard altogether for making reimbursement determinations.  The Court would be remiss to interject itself into FEMA's exercise of discretion.  *Cf. Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474–75 (3d Cir. 2003) ("The lesson of [*Heckler v. Chaney*, 470 U.S. 821 (1985)] is that 'review is not available in those rare circumstances where the relevant statute is so drafted that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'") (quoting *M.B. v. Quarantillo*, 301 F.3d 109, 112 (3d Cir. 2002)).

In the absence of a cognizable claim, this Court has no jurisdiction.  Consequently, the Court will dismiss Plaintiff's bad faith claim for lack of jurisdiction.  To the extent that Plaintiff presents this claim as a gloss on his breach of contract claim—*i.e.*, that Selective acted in bad faith in its adjustment and denial of his 2007 POLs—this claim is barred by Plaintiff's non-compliance with SFIP filing requirements, *see supra* Part III.A.

C.  *Respondeat Superior*

Before considering Plaintiff's state-law tort claims, this Court must address whether Selective may be held vicariously liable for the conduct of its insurance agents.  Although Plaintiff presents his tort claims arising from the 2007 flood losses to the Washington and Wyoming properties as composite claims, the Court understands these claims to assert distinct harms arising from property-specific misrepresentations: (1) with regard to the Wyoming property claim, Selective's full payment of the 1999 flood claim and continued rating of the

16

property as a non-basement dwelling prior to the 2007 flood, notwithstanding the fact that the property's partially submerged first floor constituted a "basement" entitled to limited coverage under the SFIP; and (2) with regard to the Washington property, assurances by his Boniakowski insurance agent that the SFIP would cover contents kept in the basement.[15]  Only the Washington property theory of misrepresentation seeks to impose vicarious liability against Selective for the conduct of an insurance agent.  The Court must determine whether the NFIP permits vicarious liability for this portion of Plaintiff's claims.

Selective argues that the NFIP forecloses holding a WYO insurer vicariously liable for the conduct of its insurance agents.  Specifically, Selective notes that the NFIP creates a division of liability, whereby WYO insurers act as "fiscal agents of the United States," 42 U.S.C. § 4071(a)(1), who are "solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Federal Insurance Administrator," 44 C.F.R. § 62.23(g), and "the duly licensed property or casualty agent acts for the insured and does not act as agent for the Federal Government," 44 C.F.R. § 61.5(e).  Further support for this division of liability, Selective argues, comes from 42 U.S.C. § 4081(c), which prohibits FEMA from "indemnify[ing] an agent or broker for his or her error or omission."  *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005) (noting that § 4081(c)'s prohibition on indemnification "is plainly limited to claims against agents and brokers, as distinct from

---

[15]Plaintiff's deposition testimony also vaguely refers to continued assurances after the 1999 flood that his property was "100 percent" covered, though it is unclear who made these assurances, and with regard to which property these assurances were made. (Pl.'s app. vol. VI at 263, 265, Eodice Dep. at 89:4–7, 96:9–11.)  To the extent that insurance agents made such representations regarding either the Washington or Wyoming properties, Selective cannot be held liable for these representations.

[WYO insurers]").  Selective also points to the fact that federal regulations strictly limit the scope of SFIP coverage and WYO insurers' ability to modify the terms and requirements of the SFIP.  *See* 44 C.F.R. § 61.5(e) (limiting the SFIP to the "terms and conditions established by Federal statute, the [NFIP's] regulations, the Administrator's interpretations and the express terms of the policy itself" such that "representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the [NFIP's] regulations, are void"); 44 C.F.R. § 61.13(d) (providing that no provision of the SFIP may be altered or waived without the express consent of the Federal Insurance Administrator); SFIP art. VII(D) (same).

Although this division of liability differs from the typical insurer-insured relationship, courts have recognized that the regulatory design of the NFIP immunizes WYO insurers from responsibility for their insurance agents' misrepresentations to the insured.  *E.g.*, *Bull v. Allstate Ins. Co.*, 649 F. Supp. 2d 529, 541–42 (W.D. La. 2009) (finding that a WYO insurer is not liable for negligent misrepresentations of its insurance agent regarding the due date for SFIP premiums); *Demouy v. Allstate Ins. Co.*, No. 06-9629, 2008 WL 3851594, at *3–4 (E.D. La. Aug. 12, 2008) (concluding that a WYO insurer is not liable for insurance agent's failure to procure flood insurance despite homeowner's payment for such insurance).  Careful review of the NFIP regulations convinces this Court that the above courts are correct: the NFIP precludes a finding that Selective is liable for the alleged misconduct of its insurance agents.

Consequently, Selective cannot be held liable for the Boniakowski agent's representations about SFIP coverage for the Washington property's basement.  Plaintiff presents no other basis for holding Selective liable in tort for damages sustained by the Washington

18

property.  No genuine issue of material fact concerning vicarious liability under the NFIP

remains for resolution by trial.  Thus, to the extent that Plaintiff's tort claims seek damages from

Selective on the basis of agent misrepresentations about SFIP coverage for the Washington

property, the Court will grant summary judgment in favor of Selective.

> D.  *Consumer Fraud Act, Procurement Fraud, & Estoppel*

Plaintiff presents three tort claims asserting violations of the Consumer Fraud Act,

common law fraud, and estoppel.  These claims assert essentially the same theory of recovery:

namely, that Plaintiff suffered damages by relying upon Selective's misrepresentations regarding

SFIP coverage for the Wyoming property.  (*See* Compl. ¶¶ 44–50, 60–65; Pl.'s Resp. Br. at 10,

22.)  Because these claims share the same underlying theory and the parties' arguments for and

against these claims overlap, the Court will address Plaintiff's tort claims together, noting claim-

specific distinctions where appropriate.

Selective challenges Plaintiff's tort claims on two fronts, arguing first that these claims

are preempted by federal law, and second that Plaintiff's duty to know the provisions of a federal

benefits program forecloses the reasonable reliance necessary for the common law fraud and

estoppel claims.  Plaintiff responds that his claims sound in procurement fraud, which courts in

this Circuit have recognized are not preempted by the NFIP, and counters that Plaintiff's reliance

on Selective's representations was reasonable by virtue of Selective's specialized status as an

administrator of a highly technical Government benefits program.  With regard to Plaintiff's

preemption argument, the Court notes that a considerable split of authority has developed

concerning whether the NFIP preempts procurement fraud claims against WYO insurers.[16]  This

Court need not decide that issue, however, because Plaintiff's Wyoming property claims arose in

the claims adjustment context, and it is well established that state-law claims relating to the

adjustment of SFIP claims are preempted by the NFIP.  *C.E.R.*, 386 F.3d at 271–72; *see also*

*Wright*, 415 F.3d at 389–90; *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949–50 (6th

Cir. 2002).

Plaintiff fashions Selective's representations regarding the Washington and Wyoming

properties as procurement fraud, but as the Court held above, the NFIP shields Selective from

---

[16]*Compare Padalino v. Standard Fire Ins. Co.*, 616 F. Supp. 2d 538, 543–46 (E.D. Pa. 2008) (finding the NFIP did not preempt state law claims against WYO insurers for procurement fraud) *and Reeder v. Nationwide Mut. Fire Ins. Co.*, 419 F. Supp. 2d 750, 762–63 (D. Md. 2006) (same) *with Moffett*, 457 F. Supp. 2d at 586–88 (deeming procurement fraud claims against WYO insurers preempted by the NFIP).  The circuits that have considered the preemptive effect of the NFIP on state-law adjustment claims against WYO insurers—the Third, Fifth, and Sixth Circuits—have declined to comment on whether the NFIP also preempts state-law procurement fraud claims against WYO insurers.  *C.E.R.*, 386 F.3d at 272 n.12 (expressly declining to answer the question); *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949–50 (6th Cir. 2002) (same); *see also Wright*, 415 F.3d at 389–90 (5th Cir. 2005) (limiting a prior decision permitting a procurement fraud claim against a WYO insurer to go forward to the facts of that case, noting that the parties had not raised the issue of preemption).
Plaintiff relies heavily on dicta from *Messa I*, wherein a court in this District suggested, in a case that did not involve procurement fraud, that the NFIP does not preempt procurement fraud claims against WYO insurers.  122 F. Supp. 2d at 521–23.  Careful inspection of the *Messa I* dicta reveals that court's attempt to reconcile two seemingly inconsistent Fifth Circuit rulings on the subject of preemption: *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978), which held that the NFIP preempted state-law attorneys' fees and penalty provisions, and *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 797 (5th Cir. 1993), which ostensibly held that the NFIP's implementing regulations did not foreclose a state-law claim for fraudulent policy procurement.  Yet the *Messa I* argument has lost much of its luster in light of the Fifth Circuit's 2005 decision in *Wright v. Allstate Insurance Co.*   The *Wright* court unequivocally declared that *Spence* did not address the issue of preemption, noting that neither the WYO insurer defendant, nor FEMA as an *amicus*, raised the preemption defense in that case.  *Wright*, 415 F.3d at 389–90 ("A careful reading of *Spence*, however, reveals that *Spence* does not hold that state law tort claims are not preempted by the NFIA.  The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO.").

liability for the insurance agent's representations regarding the Washington property.
Accordingly, the Court may only consider the misrepresentations concerning SFIP coverage for
the Wyoming property.  Importantly, Plaintiff does not suggest that he relied on Selective's
assurances that the SFIP covered basement contents when he first purchased or subsequently
renewed the policy for the Wyoming property.   Indeed, the record suggests that Plaintiff did not
know that the Wyoming property's first floor constituted a basement until the adjustment of the
2007 flood claim.  (*See* Pl.'s app. vol. VI at 261, Eodice Dep. at 79.)  Rather, Plaintiff contends
that Selective misrepresented the scope of SFIP coverage for the Wyoming property when it paid
the 1999 flood claim in full and continued charging premiums for the property as a non-basement
dwelling prior to the 2007 flood.  (*See* Pl.'s app. vol. VI at 265, Eodice Dep. at 94:18–95:18
(explaining that he relied on Selective's payment of the 1999 claim, and not any other
representation regarding basement coverage).)  Plaintiff now acknowledges that Selective's full
payment of the 1999 flood claim was wrongful, essentially conceding that the partially
submerged first floor of the Wyoming property qualifies as a "basement" entitled to limited
coverage under the SFIP.  (*See* Pl.'s Cross-Mot. Reply Br. at 5–6; Pl.'s Resp. Br. at 18–19.)

Review of the undisputed record persuades the Court that the misrepresentations
complained of arose from the handling of Plaintiff's 1999 flood claim, not the procurement of the
policy.  The insured in *C.E.R.* sought damages in tort from the WYO insurer on the basis of the
insurer's negligence and/or bad faith in the adjustment process that resulted in what the plaintiff
believed was underpayment of his claim.  *C.E.R.*, 386 F.3d at 265–66.  Like the insured in
*C.E.R.*, Plaintiff's claim essentially presents an injury stemming from the insurer's negligent
adjustment of a claim, only the alleged injury in this case arises from the insured's reliance upon

the WYO insurer's over-payment of a prior claim rather than a misrepresentation made during the procurement or renewal of the policy.  As the Court noted above, the NFIP strictly limits the WYO insurer's authority to that of a "fiscal agent."  42 U.S.C. § 4071(a)(1); *see also* 44 C.F.R. § 62.23(g) (providing that the WYO insurer is "solely responsible for . . . obligations to the[] insured under" policies like the SFIP that have been "issued under agreements entered into with the Federal Insurance Administrator").  The NFIP prohibits a WYO insurer from modifying or waiving the terms and requirements of the SFIP without the express consent of the Federal Insurance Administrator, 44 C.F.R. § 61.13(d), SFIP art. VII(D), and further provides that "representations regarding the extent and scope of coverage which are not consistent with the National Flood Insurance Act of 1968, as amended, or the [NFIP's] regulations, are void," 44 C.F.R. § 61.5(e).  Article VII(D) of the SFIP further provides that "No action [the WYO insurer] take[s] under the terms of this policy constitutes a waiver of any of [the WYO insurer's] rights." Not only did Selective lack the authority to expand SFIP coverage, but it appears that Selective retained the authority under the SFIP to recoup the purported overpayment of the prior claim.

Selective's error consisted of erroneously rating the Wyoming property as a non-basement dwelling and then adjusting the claim under the SFIP pursuant to that assumption, an error that resulted in a windfall for Plaintiff.  Drawing all inferences in the light most favorable to Plaintiff, Plaintiff's claims assert a series of claim adjustment errors.  Accordingly, Plaintiff's Consumer Fraud Act, common law fraud, and estoppel claims are preempted by the NFIP.  *See C.E.R.*, 386 F.3d at 271–72.  This Court's ruling is bolstered by FEMA's 2000 amendment to the SFIP, which applied to Plaintiff's insurance policies.  *See* SFIP art. IX ("This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the

flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law."); FEMA National Flood Insurance Program 65 Fed. Reg. 60,758, 60,767 (Oct. 12, 2000) (explaining that the SFIP amendment reflected the "need for uniformity in the interpretation of and standards applicable to the [SFIPs] and their administration" to accomplish FEMA's goal of providing "the same benefits . . . to insureds . . . whether the policy is purchased from a WYO insurance company or from the Federal government").

However, assuming *arguendo* that the above misrepresentations somehow constituted procurement fraud, the Court agrees with Selective that Plaintiff would not be able to establish the reasonable reliance necessary for his common law fraud and estoppel claims.[17]  As Selective correctly observes, the Supreme Court has consistently held that a participant in a federal benefits program cannot estop the Government from enforcing the program's legal requirements on the

---

[17]The common law requirements for fraud in New Jersey are: (1) a material misrepresentation of fact; (2) defendant's knowledge or belief of the falsity of the representation; (3) defendant's intent that the other person rely on the representation; (4) the other person *reasonably relies* on the misrepresentation; and (5) the other person's reliance results in damages.  *E.g.*, *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005).  Estoppel, meanwhile, usually entails (1) a party's knowing misrepresentation; (2) reasonable reliance upon the misrepresentation by the party invoking estoppel; and (3) injury resulting from the invoking party's reliance.  *E.g.*, *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984); *United States v. Asmar*, 827 F.2d 907, 913 (1987).  The New Jersey Consumer Fraud Act, by contrast, does not require a showing of reasonable reliance in order to state a claim for relief.  N.J. Stat. Ann. § 56:8-2 ("The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, *whether or not any person has in fact been misled*, deceived or damaged thereby, is declared to be an unlawful practice.") (emphasis added).

basis of a Government agent's misrepresentations about the program.  *See, e.g.*, *Richmond*, 496 U.S. at 416–26 (holding that a federal disability benefits recipient could not estop the Government from discontinuing his benefits on the basis of a Government agent's erroneous advice regarding the recipient's eligibility); *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63–65 (1984) (ruling that a healthcare provider could not rely on (i) their Medicare intermediary's advice regarding reimbursable expenses, and (ii) the Government's subsequent reimbursement of those expenses to estop the Government from recouping payments made contrary to federal law); *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–86 (1947) (finding that a local administrative agency's misrepresentations about the scope of coverage provided by the federal crop insurance program did not permit the insured farmers to collect from the Government for coverage not provided by federal law).  These decisions reflect the import of the Appropriations Clause of the U.S. Constitution, art. I, § 9, cl. 7, which provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." *Richmond*, 496 U.S. at 424–27.  "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law," *Heckler*, 467 U.S. at 63, and it is "the duty of all courts to observe the conditions defined by Congress" and the appropriate administrative agency acting pursuant to law "for charging the public treasury," *Merrill*, 332 U.S. at 385.

Although one court has argued that WYO insurers, as private parties, could not invoke the *Merrill/Heckler* defense in the tort context, *see Padalino v. Standard Fire Ins. Co.*, 616 F. Supp. 538, 548 (E.D. Pa. 2008) (finding state law procurement fraud claims against WYO

insurers not preempted by the NFIP),[18] the decisions of numerous other courts that a WYO insurer may not be estopped from enforcing SFIP filing requirements—WYO agent misrepresentations notwithstanding—convinces this Court otherwise.  *See, e.g.*, *Suopys*, 404 F.3d at 809–11; *Gowland v. Aetna*, 143 F.3d 951, 954–55 (5th Cir. 1998); *Messa II*, 122 F. Supp. 2d at 532.  Considering that WYO insurers have no greater authority to modify the scope of SFIP coverage than to waive SFIP filing requirements under the NFIP, *see* 44 C.F.R. §§ 61.5(e), 61.13(d), SFIP art. VII(D), the Court can think of no reason why the *Merrill/Heckler* defense that so many courts have held shielded WYO insurers from misrepresentations about SFIP filing requirements would not apply with full force to protect WYO insurers from misrepresentations concerning the scope of SFIP coverage.

Plaintiff contends that *Merrill* and its progeny are distinguishable because Selective's misconduct violated its Arrangement with FEMA, thereby disqualifying Selective from reimbursement by FEMA for any damages awarded by this Court.  In other words, Plaintiff argues that federal funds are not at stake.  While the Court recognizes that the NFIP provides a mechanism for FEMA's Office of General Counsel and the Federal Insurance Administrator, through the joint exercise of discretion, to disallow reimbursement of litigation costs arising from WYO insurer conduct "significantly outside the scope of th[e] Arrangement, and/or involv[ing] issues of agent negligence," Arrangement art. III(D)(3)(a)–(b), as noted above, the NFIP does not

---

[18]Alternatively, the *Padalino* court held that WYO insurer's misrepresentations about the scope of SFIP coverage nullified the SFIP contract between the insured and the WYO insurer pursuant to 44 C.F.R. § 61.5(e).  616 F. Supp. at 548–49.  While that regulation provides that "representations regarding the extent and scope of coverage which are not consistent with [federal law] are void," this Court does not read this regulation to completely nullify any resulting SFIP so as to remove the insurer-insured relationship from the NFIP.

grant federal courts concurrent jurisdiction to monitor WYO insurers' compliance with the

Arrangement or provide a judicially manageable standard for making such determinations, *see

supra* Part III.B.  Consequently, Plaintiff's assertion that his claims do not implicate federal

funds "seems at best conclusory."  *Moffett*, 457 F. Supp. 2d at 587 ("Insofar as it is for FEMA's

General Counsel in given cases 'to recommend' what is outside the Arrangement, and—so as not

to unduly discourage WYO's from participating in the program—he chooses not to, federal funds

are surely implicated.  And while FEMA may well decline to indemnify WYO's for certain

errors, omissions, or negligence, where, as here, WYO's are sued for . . . procurement fraud . . . ,

FEMA would still presumably have a duty to defend such claims until such time as they are

proven, since the claims might in fact prove to be totally groundless.  This would involve federal

funds."); *see also Wright*, 415 F.3d at 388–89 (rejecting insured's argument that FEMA's

authority to decline reimbursement of WYO insurers' litigation costs meant federal funds were

not at stake in a lawsuit challenging the denial of SFIP insurance claims).[19]

Participants in federally-funded benefits programs such as the NFIP bear "the risk of

having accurately ascertained that he who purports to act for the Government stays within the

bounds of his authority."  *Merrill*, 332 U.S. at 384.  Essentially a constructive notice rule, this

burden "assure[s] that public funds will be spent according to the letter of the difficult judgments

---

[19]On the subject of FEMA's authority to decline reimbursement of a WYO insurer's litigation expenses, Plaintiff requests that the Court strike the entirety of the affidavit submitted by Selective's Flood Operations Manager Deborah Gangemi on the basis that Selective wrongfully refused to disclose information appearing in the affidavit regarding FEMA's reimbursement of Selective's litigations costs in this case.  (*See* Gangemi Aff. ¶ 39.)  From the Court's review of the record, Plaintiff's discovery dispute does not warrant striking the entirety of the Gangemi affidavit (which addresses much more than FEMA's reimbursement of Selective's litigation costs) from the record, and the Court need not rely on the contested portion of the affidavit to decide the present motions.

reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Richmond*, 496 U.S. at 428.  Express provisions of the SFIP defined the limited coverage available for basements.  SFIP arts. II(B)(5) (defining "basement" as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides"), III(A)(8) (detailing coverage for building property in a basement), III(B)(3) (detailing coverage for personal property kept in a basement).  The NFIP prohibits WYO insurers from modifying any portion of the SFIP (be it filing requirements or scope of coverage), 44 C.F.R. § 61.13(d), SFIP art. VII(D), and invalidates misrepresentations about the scope of SFIP coverage, 44 C.F.R. § 61.5(e).  Like the wheat farmers in *Merrill*, Plaintiff may not rely on a Government agent's misrepresentations about a federally funded insurance policy to procure benefits not provided for by law.  Such reliance is unreasonable as a matter of law.

No genuine issue of material fact remains for resolution by trial.  This Court will grant summary judgment in favor of Selective on Plaintiff's Consumer Fraud Act, common law fraud, and estoppel claims.

## IV.   CONCLUSION

For the aforementioned reasons, the Court will grant Selective's motion for summary judgment (Doc. No. 35) on Counts I and III–VI of Plaintiff's Complaint and deny Plaintiff's

cross-motion for partial summary judgment (Doc. No. 38).  The Court will also dismiss Count II

of Plaintiff's Complaint for lack of jurisdiction.  An appropriate form of order accompanies this

Memorandum Opinion.

Dated: February 8, 2010

_____/s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.